## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANICA ASHBOURNE             )
                                    )
               Plaintiff,     )
      v.                    )        Civil Action No.12-1153 (BAH)
                                      )
TIMOTHY GEITHNER,       )
Secretary                       )
                                      )
DONNA HANSBERRY,      )
Director, GHW                 )
                                      )
DONNA PRESTIA,         )
Assistant Director, GHW     )
                                      )
THOMAS COLLINS,        )
 Territory Manager, GHW    )
                                      )
US DEPARTMENT OF THE TREASURY,  )
Internal Revenue Service (GHW),   )
a component of the U.S. Department  )
of the Treasury            )
                                      )
               Defendants.   )

## FEDERAL DEFENDANTS' MOTION TO DISMISS

       Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

defendants, in their official and individual capacities, through counsel, respectfully move this

Court to dismiss the instant amended complaint on the grounds of lack of subject matter

jurisdiction and failure to state a claim upon which relief may be granted.   In support of this

motion, the defendants respectfully refer the Court to the attached memorandum of points and

authorities.

Date:   December 16, 2013

Respectfully submitted,


RONALD C. MACHEN JR.,
D.C. BAR #447889 United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

_____/s/_____
BENTON G. PETERSON Bar # 1029849
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7238

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANICA ASHBOURNE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.12-1153 (BAH)** |
| **TIMOTHY GEITHNER,** | ) | |
| **Secretary** | ) | |
| | ) | |
| **DONNA HANSBERRY,** | ) | |
| **Director, GHW** | ) | |
| | ) | |
| **DONNA PRESTIA,** | ) | |
| **Assistant Director, GHW** | ) | |
| | ) | |
| **THOMAS COLLINS,** | ) | |
| **Territory Manager, GHW** | ) | |
| | ) | |
| **US DEPARTMENT OF THE TREASURY,** | ) | |
| **Internal Revenue Service (GHW),** | ) | |
| **a component of the U.S. Department** | ) | |
| **of the Treasury** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF THE
## FEDERAL DEFENDANTS' MOTION TO DISMISS

The Federal Defendants, through counsel, hereby move this Court to dismiss the instant

amended complaint pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

The plaintiff brings suit against Defendants in their official and individual capacities.

Consolidated and Amended Complaint at ¶¶ 8-10 (Amend. Compl.).   The plaintiff brings these

causes of action for injunctive, declaratory, and monetary relief pursuant to the Privacy Act 5

U.S.C. §552a(g)(1)(c), (g)(1)(d), and (e) *et seq.,* and 42 U.S.C. §1983 of 1974, Amend. Compl. at ¶1.

The Defendants move to dismiss the plaintiff's Privacy Act and 42 U.S.C. §1983 claims for failure to state a claim, lack of subject matter jurisdiction, failure to properly serve the individually sued Defendants and failure to state a claim against Defendants pursuant to 42 U.S.C. § 1983 or 28 U.S.C. §1343 because such claims are predicated on the deprivation of constitutional rights by a person acting under color of state law, not federal law and to the extent that plaintiff is suing the Defendants under § 1343 or § 1983's federal analog established by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), her claim for equitable relief fails because a Bivens's remedy is 'damages or nothing.'" Id.[1] Therefore, the Court should dismiss the plaintiff's suit against Defendants.

## FACTUAL BACKGROUND

On June 21, 2010, plaintiff was appointed to the competitive-service position of Internal Revenue Agent, GS Series 0512, Grade 13, in the U.S. Department of the Treasury ("Treasury"or "Agency"), Internal Revenue Service ("IRS"), Large Business and International ("LB&I"),Global High Wealth Division ("GHW"). *See* ECF No. 16, Exhibit No. 1. This position was subject to successful completion of a one-year probationary period. *See id.* On May 10, 2011, the Agency informed plaintiff that it was proposing to terminate her employment during her probationary period for providing misleading information during the preemployment process. *See* Exhibit No. 2 (Letter from U.S. Department of Treasury to Anica Ashbourne). On May 19, 2011, plaintiff

---

[1]   Plaintiff explicitly concedes in the attachment to her amended complaint that she "did not file a *Bivens* action does not intend to file a *Bivens* action, and does not want this Court to construe her claims as a *Bivens* action."   ECF No. 27 at 19 (attachment).

provided a written response to the proposed termination letter. On May 26, 2011, after considering plaintiff's written reply, the Agency informed plaintiff that it was moving forward with her termination effective May 28, 2011. *See* Exs. 1-3 ( Agency Proposed Termination Letter; plaintiff's Response and Agency's Decision Letter).

On September 2, 2011, plaintiff filed a Petition for Review (PFR) with the MSPB.   Under 5 C.F.R § 1201.115(d), the Board may grant a PFR when it is established that new and material evidence is available that, despite due diligence, was not available when the record closed, or the decision of the judge is based on an erroneous interpretation of statute or regulation.   In her PFR, plaintiff alleged that the proposal letter was "facially void and frivolous" and not sufficiently detailed. In addition, she alleged that she was not given a meaningful opportunity to be heard, there was not legally sufficient evidence to support the charges, and the deciding official was biased in making his decision. On September 27, 2011, the Agency submitted its response to the PFR challenging plaintiff's assertions. On September 30, 2011, plaintiff withdrew her PFR.   On December 2, 2011, the MSPB dismissed the PFR as withdrawn with prejudice.   Ex. 4.

## **STANDARDS OF REVIEW**

### I.    **12(b)(1) – LACK OF SUBJECT MATTER JURISDICTION**

"Without jurisdiction the court cannot proceed at all in any cause.   Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."   *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) (citation omitted).   Jurisdiction is an independent, preliminary issue to be resolved before analyzing the merits of the plaintiff's claims.   *Greenhill*

3

*v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007) (citations omitted).    "It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."    *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted).    Thus, "the plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence."    *See Moore v. Bush*, 535 F. Supp. 2d 46, 47 (D.D.C. 2008).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, but    may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."    *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (*quoting Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).    *See also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction).

## II.    12(b)(6) – FAILURE TO STATE A CLAIM

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In this regard, the Court must construe the factual allegations of the complaint (amended) in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences

that can be derived from the facts as they are alleged in the complaint. *See Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support the plaintiff's claims for relief. *See Twombly*, 550 U.S. at 570. In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider documents either attached to or incorporated in the complaint and matters of which it may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## ARGUMENT

### I    PLAINTIFF IS PRECLUDED FROM CHALLENGING HER TERMINATION UNDER THE CSRA

Plaintiff has now pursued relief concerning alleged prohibited personnel practices or other violations ostensibly encompassed by the Civil Service Reform Act (CSRA) when she appealed her termination to the MSPB. After the MSPB dismissed her appeal because of lack of jurisdiction, her only recourse was to appeal the MSPB decision to the Federal Circuit, which she

has elected not to do.   Plaintiff cannot now seek review of the MSPB decision in district court or otherwise challenge her termination in a de novo proceeding in district court under the CSRA.

In 1978, Congress enacted the Civil Service Reform Act to "replace the prior 'patchwork' system of laws governing federal employment with 'an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.' " *Wildberger v. Federal Labor Relations Authority*, 132 F.3d 784, 787 (D.C. Cir. 1998), *quoting United States v. Fausto*, 484 U.S. 439, 445 (1988).   *See also Lindahl v. OPM*, 470 U.S. 768, 773 (1985).   The *Wildberger* court further explained that "the Court recognized in *Fausto* that 'the primacy of the MSPB for administrative resolution of disputes over adverse personnel action,' with judicial review by the Federal Circuit, is an important 'structural element' evident in the framework of the Act."   *Id*. at 792, *quoting Fausto*, 484 U.S. at 449 (citations omitted).

The court in *Hunt v. U.S. Dept. of Agriculture*, 740 F. Supp. 2d 41 (D.D.C. 2010), provides a comprehensive explanation of the preclusive effect of this statutory scheme, saying: The CSRA created "an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].' " *Fausto*, [484 U.S. at 443] (*quoting Lindahl v. OPM*, 470 U.S. at 773.   Under the CSRA, a federal employee may seek relief from adverse personnel actions through an appeal to the Board and may obtain subsequent review of Board decisions in the Federal Circuit.

Recognizing the breadth of the statutory scheme, the D.C. Circuit has repeatedly held that the CSRA's exclusion of some personnel actions illustrates Congress's intent to preclude judicial review in this Court of both actions that are covered by the CSRA and those that are outside its

bounds. *See* e.g., *Fornaro v. James*, 416 F.3d 63, 66 (D.C.Cir. 2005) ("[T]hese remedial

provisions are exclusive, and may not be supplemented by the recognition of additional rights to

judicial review having their source outside the CSRA."); *Spagnola v. Mathis*, 859 F.2d 223, 227

(D.C. Cir. 1988) (en banc) (per curiam) ("[I]t is the comprehensiveness of the statutory scheme

involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention.");

*Harrison v. Bowen,* 815 F.2d 1505, 1516 n. 25 (D.C. Cir.1987) ("[The CSRA] creates an

extensive scheme regulating civil service personnel decisions" and courts should not "allow an

employee to circumvent this detailed scheme governing federal employer-employee relations by

suing under the more general APA.") (quotations omitted); *Gray v. Office of Personnel Mgt.*, 771

F.2d 1504 (1985) (holding that the comprehensive remedial scheme established by Congress in

the CSRA indicates a congressional intent to preclude judicial review under the APA of claims

that should be reviewed administratively under the CSRA). *Hunt*, 740 F. Supp. 2d at 46-47

(emphasis added).   Preceding *Hunt*, the court in *Kursar v. Transportation Sec. Admin*., 581 F.

Supp. 2d 7 (D.D.C. 2008), reviews the landscape of case authority establishing the preclusive

effect of the CSRA, recognizing that "[n]umerous courts have interpreted Fausto as 'stand[ing] for

the general proposition that judicial review is unavailable to a federal employee who has suffered

an adverse personnel action if [the] CSRA does not provide judicial review.' " *Kursar*, 581 F.

Supp. 2d at 16 (reviewing authority), *quoting Pathak v. Dep't of Veterans Affairs*, 274 F.3d 28, 31

(1st Cir. 2001).

　　　The consequence then of this broad, preempting statutory scheme is that the CSRA is the

exclusive remedy for government employees who have suffered certain adverse personnel

actions, even if it affords incomplete relief.   "[T]he District of Columbia Circuit ... held in

*Graham v.Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004), that the 'explicit assumption in Fausto that

employees with judicial review rights under the CSRA may not obtain judicial review of personnel actions outside the bounds of the CSRA' applies to even 'minor ... personnel actions.' " *Id*. at 934-35, as quoted in *Kursar*, 581 F. Supp. 2d at 16.  Apropos of plaintiff's case here, the court in *Kursar* determined that a probationary employee's constitutional challenge to his termination from the Transportation Security Administration was barred by the Federal Circuit's prior rejection of the same claim.  *Id.* at 16-17.  Plaintiff's case should suffer the same result because her exclusive opportunity to challenge her termination was part of an appeal under the CSRA, before the MSPB.

Although plaintiff, because of her status as an excepted service probationary employee, did not qualify as an "employee" entitled to appeal her termination under the CSRA, plaintiff nevertheless is precluded from advancing any other claim not specifically supported by its own statutory scheme.  As the court explained in *Cross v. Samper*, 501 F. Supp. 2d 59 (D.D.C. 2007), "the CSRA provides comprehensive and substantive protection to a federal employee asserting a claim of a constitutional violation, such as retaliation for engaging in speech protected by the First Amendment, and therefore bars any separate civil action."  *Id.* at 62 (emphasis added), *citing in Bush v. Lucas*, 462 U.S. 367, 389-390 (1983).  So whatever non-statutory claim plaintiff seeks to advance is barred.  "*Bush v. Lucas* relied on the CSRA to bar Bivens[] complaints by federal employees even in cases where there would be "no remedy whatsoever for short suspensions or for adverse personnel actions against probationary employees."  *Cross*, 501 F. Supp. 2d at 62, (quoting  *Bush v. Lucas*, 462 U.S. at 385 n.28, as quoted in *Spagnola v. Mathis*, 859 F.2d at 228 n. 8 (footnote omitted)).

Of course, non-constitutional claims are covered by this rule, as explained by the court in *Arakawa v. Reagan*, 666 F. Supp. 2d 54 (D.D.C. 1987), which examined the holding in *Carducci*

8

*v. Regan*, 714 F.2d 171 (D.C. Cir. 1983), ... "that the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions."   *Id*. at 174, as quoted in *Arakawa*, 666 F. Supp. 2d at 258 (citations omitted).

Accordingly, as pointed out by the court in *United States v. Connolly*, 716 F.2d 882 (Fed.Circuit 1983), the statutory scheme completely forecloses the availability of relief for a probationary employee under the CSRA.   The court there, after summarizing the statutory exclusion of probationary employees from a right to judicial review of adverse actions, stated, courts have concluded that probationary employees may not appeal adverse actions under the Act. *See Bush v. Lucas*, 462 U.S. 367, 385 n. 28 (1983).

The legislative history of the Reform Act entirely forecloses the possibility that probationary employees have some sort of unspecified private right of action in Federal Court under the Act to seek judicial review of their removals.   The policy of denying probationary employees the right to challenge such terminations was explicitly outlined in the Senate Report accompanying the Act:

> The probationary or trial period is an extension of the examining process to determine an employee's ability to actually perform the duties of the position. It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period.

*Connolly*, 716 F.2d at 886 (emphasis added; citations omitted), citing S.Rep. No. 969, 95th Cong., 2d Sess. 45 (1978), reprinted in 1978 U.S. Code Cong. & Ad.News 2723, 2767. *See also id.* at 48, 1978 U.S. Code Cong. & Ad. News at 2770 (procedural protections and appeal rights do not apply to probationary employees).

Thus, to the extent plaintiff is attempting to challenge her termination by suggesting that there was insufficient support for the stated grounds for her termination, those claims are not actionable.

## II.    PLAINTIFF FAILS TO STATE A CLAIM

## CLAIMS AGAINST THE FEDERAL DEFENDANTS IN THEIR OFFICIAL CAPACITY

### A.    Plaintiff has Failed to Identify Any Waiver of the Sovereign Immunity of the United States that Permits Judicial Review of a Constitutional Challenge to Personnel Actions Taken by the Defendants

Sovereign immunity bars all suits against the United States except in accordance with the explicit terms of the statutory waiver of such immunity.  *Lane v. Peña*, 518 U.S. 187, 192 (1996); *See also United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*, 424 U.S. 392, 399 (1976).   The Constitution does not waive the federal government's sovereign immunity in a suit for damages.  *See Garcia v. United States*,666 F.2d 960, 966 (5th Cir. 982); *Marshall v. Reno*, 915 F. Supp. 426, 434 (D. D.C. 1996); *Dickson v. United States*, 831 F. Supp. 893, 899 (D. D.C. 1993).   Plaintiff, who has named the Treasury Department and several federal employees of that agency as Defendants in this matter, claims that her constitutional rights were violated in connection with a termination and is seeking monetary damages for the alleged violations. Complt. ¶ 34.   However, plaintiff's claims must fail because "the United States simply has not rendered itself liable . . . for constitutional tort claims."  *Meyer,* 510 U.S. at 478.   Accordingly, plaintiff's constitutional claims for damages against the Department of Treasury are barred by sovereign immunity, and must be dismissed.

**1. Plaintiff's claims must Be Dismissed Because the Federal Employees Were Not Acting under the Color of State Law, but Rather Federal Law**

The plaintiff has failed to state a claim against the federal Defendants under 42 U.S.C. § 1983 or 28 U.S.C. § 1343 which permits claims only against state agents. 42 U.S.C. § 1983 (Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."). A defendant in a §1983 action must have exercised power "possessed by virtue of state law and made possible only because the alleged wrongdoer is clothed with the authority of state law." *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005) (*quoting United States v. Classic*, 313 U.S. 299, 326 (1941)).

Here, plaintiff alleges a violation of her Constitutional  rights under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, stemming from an accused misrepresentation on her pre-employment application that led to her termination with the IRS.  Complt. at ¶ 17.  Yet, as plaintiff recognizes, the officials at issue worked for the IRS at all times relevant to this incident.  Complt. at ¶11.  Because the IRS employees are federal, and not state employees, they were not acting under the "color of state law," but rather federal law. Further, plaintiff has failed to identify any state law allegedly providing the officials at issue with the authority under state law to terminate her.  Consequently, plaintiff has not stated a claim under either 42 U.S.C. § 1983 or 28 U.S.C. § 1343 and these claims should therefore be dismissed.

### a. Plaintiff's Constitutional Claims for Money Damages

When sued in their official capacities, government officials are not personally liable for damages; rather the damages action is equivalent to one against the government itself.  *See*

11

*Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996).   That plaintiff may have

named (or sought to name) a federal employee as a defendant in their official capacity does not

operate to evade the immunity of the sovereign.   *See Clark v. Library of Congress*, 750 F.2d at

102-104; *Nattah v. Bush*, 541 F.Supp.2d 223, 229-30 and n.6 (D.D.C. 2008).

The legislative history clearly shows that Congress did not intend for Section 1983 to apply

against federal actors.   Instead, it was promulgated to provide a measure of federal control over

state officials who were either unwilling or unable to protect certain individuals against the

deprivation of their constitutional rights.   Section 1983 provided a remedy where none existed.

It provided a mechanism to protect against a state official's conduct.   Congress, in describing a

1979 amendment to Section 1983 "makes clear that Federal courts shall have jurisdiction of

section 1983 actions against District of Columbia officials acting under authority of local laws,

even if those laws were passed by Congress."   H.R. Rep. No. 96-548, at 2 (1979), reprinted in

1979 U.S.C.C.A.N. 2609, 2610.

Thus, the words and history of Section 1983, including the 1979 amendment do not

provide for a cause of action under Section 1983 under the circumstances described in plaintiff's

amended complaint.[2]

---

[2]The purpose of Sections 1983 and 1343 were to provide a causes of action where there was none.
Indeed, Congress in 1979 provided individuals within the District of Columbia with a remedy for
the deprivation of protected rights where there was none before.   In the instant case, Plaintiff's
remedy, if one exists, was created by the Supreme Court in *Bivens v. Six Unknown Named Agents
of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).   Under proper circumstances (not alleged
here), a plaintiff may pursue a claim under the Bivens doctrine against a federal employee in his
official or her individual capacity, but not a Section 1983 action.   *See e.g.*, *Berry v. Funk*, 146 F.3d
1003, 1013 (D.C. Cir. 1998) (noting that plaintiffs can bring *Bivens* actions against federal
officials and section 1983 actions against state officials); *McCord v. Bailey*, 636 F.2d 606, 613
(D.C. Cir. 1980) ("Actions of federal officers are outside of [section 1983's] proscriptions.");
*Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2nd Cir. 1991) (an action brought pursuant to
Section 1983 "cannot lie against federal officials"); *Heck v. Humphrey*, 512 U.S. 477 (1994)

## CLAIMS AGAINST THE INDIVIDUAL FEDERAL DEFENDANTS[3]

**B.  This Court Lacks Personal Jurisdiction Over Defendants in their Individual Capacity, As Plaintiff Has Failed To Effect Proper Service**

This Court is without personal jurisdiction over Defendants in their individual capacities in the absence of proper service.[4]   It is well established that, in an action against a federal employee in an individual capacity, the individually-sued defendant must be served with process in accordance with rules applicable to individual defendants.  *See Simpkins v. District of Columbia Government*, 108 F.3d 366, 369 (D.C. Cir. 1997); *Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C. 1978); *Navy, Marshall & Gordon v. U.S. International Development-Corporation Agency*, 557F. Supp. 484, 489 (D.D.C. 1983); *Delgado v. Bureau of Prisons*, 727 F. Supp. 24 (D.D.C. 1989). Federal Rule of Civil Procedure 4 generally requires that a copy of the summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there.   Fed. R. Civ. P. 4(e)(2).   Service on the Attorney General of the United States and the United States

---

(stating that section 1983 provides access to a federal forum for claims of unconstitutional treatment at the hands of state officials); Community For Creative Non-Violence v. Unknown Agents of the United States Marshals Service, 791 F. Supp. 1 (D.D.C. 1992) (the United States Marshals Service for the Superior Court of the District of Columbia was acting under color of federal law when Deputy Marshals executed an arrest warrant issued by the D.C. Superior Court).

[3]  Plaintiff has explicitly denied that she intended to file a "*Bivens*" action.   ECF No. 27 at 19(attachment). Wisely so because the Supreme Court and the District of Columbia Circuit have recognized that her remedy lies in the CSRA, or not at all. *See Bush v.Lucas*, supra (CSRA preempts *Bivens* remedies- whether or not the CSRA provides a plaintiff with what he or she considers to be a remedy that is "adequate."); *Spagnola v. Mathis*, 859 F.2d at 228-9.   Further, in *Bush v. Lucas*, the Supreme Court held that adverse personnel decisions do not provide federal employees with a cause of action against their supervisors for damages allegedly arising from violations of the employee's constitutional rights.   Thus, any claim Plaintiff would have against the named individuals in this case, should be dismissed.

[4] The Individually named defendants are: Donna Hansberry, Director, GHW, Donna Prestia, Assistant Director, GHW, Thomas Collins, Territory Manager, GHW.

Attorney for the district in which the action is brought, pursuant to the rules applicable to official

capacity suits, "does not obviate the requirement of personal service . . . where the action is in

substance against a federal official in his individual capacity." *Lawrence*, 79 F.R.D. at 670;

*Delgado*, 727 F. Supp. at 27.   Indeed, under Rule 4, service on the United States is required in

addition to service on an individual Federal defendant.   Fed. R. Civ. P. 4(i)(3).

　　　Where, as here, plaintiff seeks relief against defendants in their individual capacities, the

Court must acquire personal jurisdiction in order to enter a binding judgment, *Reuber v. United*

*States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984); *Griffith v. Nixon*, 518 F.2d 1195 (2d Cir.), cert.

denied, 423 U.S. 995 (1975), and the general rule is that a plaintiff has the burden of establishing

personal jurisdiction.   *Reuber*, supra at 1052.

　　　 Here, plaintiff failed to effect service upon the individual Defendants at their   "dwelling

house or usual place of abode."   Because the record in this action does not establish proper

personal service upon the individual Defendants, any claim against them in their individual

capacity is subject to dismissal.   Fed. R. Civ. P. 4(i); 12(b)(2), 12(b)(4), 12(b)(5); *Chen v.*

*District of Columbia*, 256 F.R.D. 263, 266 (D.D.C. 2009) (dismissing claim against defendant

where plaintiff merely mailed a copy of the summons and complaint to the defendant's place of

work); *See Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 8 n.6 (D.C. Cir.

1998) (noting that service upon officers of the United States sued in their official capacity at their

place of business did not satisfy service requirements under Fed. R. Civ. P. 4 as to individual

capacity claims).[5]

---

[5]Under some circumstances, additional opportunities may be available to a plaintiff to effect
proper service on a defendant in a civil action.   *See* Fed. R. Civ. P. 4(i)(3); *Moore v. Agency for*
*International Development*, 994 F.2d 874 (D.C. Cir. 1993).   However, in light of the several other
reasons calling for dismissal of Plaintiff's claims, no purpose would be served by the calling for

### 1. Plaintiff fails to state a claim as to the individually named Defendants

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As with facial challenges to subject-matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). However, where "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of '"entitlement to relief."'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Further, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. While "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, []it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*.

---

additional efforts to effect proper service in this action. *See Simpkins v. District of Columbia Government*, 108 F.3d at 370 (dismissing baseless claims on the merits notwithstanding lack of proper service).

Here, it is abundantly clear that the allegations pressed by the plaintiff (as opposed to the legal conclusions) are insufficient to establish any constitutional claim.   Thus, none of the allegations in the amended complaint can support a claim for relief and certainly not one that can withstand the defense of immunity, discussed *supra*.   Accordingly, any claim that plaintiff may be seeking to pursue against the individually named Defendants based on constitutional provisions is subject to dismissal.   Plaintiff has alleged little more than her mere disagreement with the amount of process she believes she was due prior to the termination of her probationary employment.   Amend. Compl, ¶¶ 64-77.   This assertion in the amended complaint is predicated on 42 U.S.C. § 1983 and 28 U.S.C. § 1343.   As stated above these statutes do not provide the jurisdictional basis for this lawsuit.   The provision cited by plaintiff provides a federal court with jurisdiction to "redress the deprivation, **under color of any State** law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. . . ." 28 U.S.C. § 1343(a)(3) (emphasis added).

As courts have long recognized, 28 U.S.C. § 1343 is the "jurisdictional counterpart" to claims under 42 U.S.C. § 1983, which provides a cause of action against "every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution. . . ." (emphasis added). *See Lynch v. Household Finance Corp*., 405 U.S. 538, 540 (1972).   Plaintiff's suit, however, is against federal officials, who do not act "under color of any State law," which is the prerequisite to jurisdiction under 28 U.S.C. § 1343. Those statutes have no bearing here as violation based upon these sections   must be based upon the actions of a person acting under color of state law.   *Jones v.*

16

*Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (Section 1983 does not apply to officials acting under color of federal law, such as a federal prosecutor); *Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C.), aff'd 809 F.2d 291 (D.C. Cir. 1989) (and cases cited therein); accord *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).    As federal officials, the individually named employees act under color of federal law. Thus, absent a specific waiver of sovereign immunity, "the basis of a federal claim - whether it be the Constitution, a statute, or a regulation - does not create a cause of action for money damages" against the United States or its agencies.    *United States v. Testan*, 424 U.S. at 401-02.

### 2. Defendants Did Not Violate Plaintiff's Due Process Rights.

#### i. Pre-Termination Hearing

Plaintiff also appears to allege that she was deprived of the specific type of pre-termination hearing she preferred. Amend Compl. at 9, Prayer for Relief.    Specifically, in her prayer for relief, she requests a pre-hearing panel, with such a panel to be made up of "Plaintiff's professional equals." *Id*.[6]    However, it is undisputed that plaintiff was a probationary employee. Therefore, she had no right to a pre-termination hearing.    Plaintiff's "status as a probationary employee is a large hurdle for her to clear in order to establish a property interest" because "[p]robationary employment is ordinarily considered employment at will." *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994) (holding that a probationary employee had no due process right to a pre-termination hearing).    Government employees "who are terminable at will have no

---

[6]And further, Plaintiff states that regardless of the findings of such a panel, she should be immediately reinstated with a promotion award, back pay, front pay and compensatory and punitive damages. Amend. Compl. at 9 (prayer for relief).

property interest because there is no objective basis for believing that they will continue to be employed   indefinitely." *Hall v. Ford* 856 F.2d 255, 265 (D.C. Cir. 1988).   Plaintiff has also failed to allege a due process violation of a property interest in her employment.   Pursuant to these binding authorities, plaintiff cannot claim any property interest under the Fifth Amendment in a hearing prior to her termination, and this due process claim should be dismissed with prejudice.

### ii. Right to a Name-Clearing Hearing

Plaintiff alleges that defendants injured her reputation and thereby violated her right to due process of law by terminating her and distributing "inaccurate" information. (Amend. Compl. ¶¶ 62.). As a result, plaintiff claims she is entitled to a "name clearing" hearing.   As a matter of law, "persons whose future employment prospects have been impaired by government defamation 'lack . . . any constitutional protection for the interest in reputation.'" *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C.Cir. 2003) (*quoting Siegert v. Gilley*, 500 U.S. 226, 234 (1991)). Courts have created two general exceptions to this rule, allowing "reputation plus" claims and "stigma or disability" claims. *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (*citing Bd. of Regents v.Roth*, 408 U.S. 564, 573-78 (1972)).   A plaintiff states a "reputation plus" claim by alleging official defamation in conjunction with a "change in status," such as termination or demotion. Some official action is necessary because "government defamation" alone is "insufficient to create a liberty interest" under the Due Process Clause. *Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995). Courts have "presumably" allowed these types of actions because "official criticism will carry much more weight if the person criticized is at the same time demoted or fired." *O'Donnell*, 148 F.3d at 1140.

18

A "reputation-plus" claim thus requires a "conjunction of official defamation and adverse employment action." *Id.*; *Holman v. Williams*, 436 F. Supp. 2d 68, 79 (D.D.C. 2006). A "stigma or disability" claim must be based on official government action that has "the broad effect of largely precluding [plaintiff] from pursuing [his] chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994) (emphasis omitted). The action must "seriously affect[], if not destroy[]" plaintiff's ability to seek employment in his field or "substantially reduce[] the value of his human capital." O'Donnell, 148 F.3d at 1141 (internal quotations and citations omitted). Thus, unlike a "reputation-plus" claim, a "stigma or disability" claim does not depend on defamatory statements. *See Holman*, 436 F. Supp. 2d at 80. Rather, plaintiff must establish that defendant "altered" her status "in a tangible way," *U.S. Info. Agency v. Krc*, 905 F.2d 389, 397 (D.C. Cir. 1990) and that a stigma "flowed from" or occurred "in conjunction with" this change. *O'Donnell,* 148 F.3d at 1141. Defamation must be "incident to" the change in status to be relevant. *See Siegert*, 500 U.S. at 234; *See also Holman*, 436 F. Supp. 2d at 80 (holding that a newspaper article published the day after plaintiff was fired could cause a "stigma or disability" where it "effectively put a significant roadblock in [plaintiff's] ability to obtain other employment"). *But see Peter B. v. CIA*, 620 F. Supp. 58, 73-74(D.D.C. 2009) (holding that defamatory statements alone could only be the basis of a "stigma or  disability" claim where they "reflected an underlying determination of [plaintiff's] clearance eligibility"). Thus, the "stigma or disability" must be caused either by the government's action or by statements contemporaneous with that action. Plaintiff has failed to allege any facts to support either of these theories.

Further, plaintiff cannot state a due process claim for statements made when she was terminated because she has already had all the "process" due to her, obviating the need for any

hearing.   The facts here show that, on May 10, 2011, the Agency informed plaintiff that it was

proposing to terminate her employment during her probationary period for providing misleading

information during the pre-employment process.[7]   On May 19, 2011, the plaintiff provided a

written response to the proposal letter. On May 26, 2011, after considering plaintiff's written

reply, the Agency informed plaintiff that it was moving forward with her termination effective

May 28, 2011.   On June 8, 2011, plaintiff filed an appeal with the MSPB.   On July 29, 2011, the

MSPB Administrative Judge issued her Initial Decision dismissing plaintiff's appeal for lack of

jurisdiction. The AJ held (1) plaintiff was not an employee as defined by 5 U.S. C. § 7511 (a)(1

)(A) because she was serving a probationary period at the time of her termination and she had not

yet completed one year of current continuous service; (2) MSPB lacked jurisdiction under 5

C.F.R. § 315.806(b) because plaintiff did not raise any allegations of discrimination based on

marital status or partisan political beliefs; (3) MSPB lacked jurisdiction under 5 C.F.R. §

315.806(c) because plaintiff had failed to make a non-frivolous allegation that the Agency failed

to comply with the proper procedures; and (4) MSPB lacked jurisdiction over plaintiff's race and

color claims as the MSPB did not have jurisdiction over the underlying personnel action.   On

September 2, 2011, plaintiff filed a Petition for Review (PFR) with the MSPB.

---

[7]The IRS federal officials in this matter adhered to Part 351 of the Office of Personnel
Management regulations, IRM 6.751.1.7 (discussing the general authority to take personnel
actions) and IRM 1.2.45-2 (explaining the delegation of the authority, which afforded Plaintiff the
requisite due process.   Plaintiff does not allege any rationale for these federal officials being
"vengeful" such as the ones in *Hartman v. Moore,* 547 US 250, 256 (2006) (recognizing a Fifth
Amendment *Bivens* action for retaliatory prosecution by public officials against a contractor who
exercised his First amendment rights).   Nor did these federal officials intentionally discriminate
against a protected class of persons.   *Navab-Safavi*, 650 F. Supp.2d at 64.   The federal officials
here acted on the termination of a probationary employee for providing misleading information.

In her PFR, plaintiff alleged that the proposal letter was "facially void and frivolous" and not sufficiently detailed. In addition, she alleged that she was not given a meaningful opportunity to be heard, there was not legally sufficient evidence to support the charges, and the deciding official was biased in making his decision. On September 27, 2011, the Agency submitted its response to the PFR challenging plaintiff's assertions. On September 30, 2011, plaintiff withdrew her PFR, declining the opportunity to avail herself of further process afforded to her. On December 2, 2011, the MSPB dismissed the PFR as withdrawn with prejudice.

Where "defendants can establish that [a prior decision's] curative effect on the injuries to plaintiff's good name and employment opportunities is as great as that of any hearing this Court could order, then the need for a remedial hearing would be obviated." *Harper v. Blumenthal*, 478 F. Supp. 176, 189-90 (D.D.C. 1979). Here, the ability to provide a written response to defendants' initial conclusions regarding the factual basis of her employment status represented on her pre-employment application provided plaintiff with adequate process. Further, plaintiff's case before the MSPB provided her with the required opportunity to refute defendants' charges and to "clear her name." A "hearing before the MSPB" can provide "an adequate opportunity to address the charges against [plaintiff] and to clear [her]name." *Gibbs v. Brady*, 773 F. Supp. 454, 457 (D.D.C. 1991) (holding that a MSPB hearing and ALJ recommendation in plaintiff's favor mooted her request for a name-clearing hearing). Thus, plaintiff has already had all the process she is due as a probationary employee.

### 3. The Plaintiff Was Not Deprived of a Liberty Interest Because She Was Not Precluded From Taking Advantage of Future Employment Opportunities

In her Amended Complaint, plaintiff alleges that she had a liberty interest in her employment and the manner in which he was terminated stigmatized her and damaged her

reputation, integrity and honesty while also impairing her ability to pursue future employment opportunities.   If the Court reaches this claim, which it should not, plaintiff's liberty interest must be dismissed because she failed to demonstrate that the Agency actually stigmatized her reputation and prevented her from pursuing employment within her profession.

Under the precedents of the Supreme Court and the D.C. Circuit, a government employee's due process rights are implicated when a firing or demotion is coupled with a defamatory official statement, *see Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983), or when an adverse employment action is combined with "a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take   advantage of other employment opportunities," *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (*quoting Roth*, 408 U.S. at 573). The first case is known as a "reputation-plus" claim; "it presumably rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired." *Id*.   Since the plaintiff does not appear to be alleging official public criticism in her complaint, we now move on to apply the second type of claim.

The second claim, which more aptly applies to the plaintiff's case, goes by the name of "stigma or disability," because "it does not depend on official speech, but on a continuing stigma or disability arising from official action." *O'Donnell*, 148 F.3d at 1140. A plaintiff may not "sue purely on the basis of the stigma associated with being fired; the Court found in *Paul v. Davis*, that stigma alone is not actionable, without a showing that a 'right or status previously recognized by state law' has been 'distinctly altered or extinguished.'"   *Id*. at 1139 (*quoting Paul*, 424 U.S. at 711) (internal citations omitted).   The plaintiff has not lost any right or status recognized by state law as a result of her termination by the Service.

In addition, plaintiff's termination does not disqualify her from engaging "in any of the common occupations of life . . . .," *Meyer v. Nebraska*, 262 U.S. 390, (1923), nor does it effectively deprive her of a future possibility to pursue her chosen profession, see, e.g., *In re Ruffalo*, 390 U.S. 544, (1968) (disbarment), or even in her chosen geographical area, *see Christhilf v. Annapolis Emergency Hospital Assn.*, 496 F.2d 174, 178 (4th Cir. 1974). The plaintiff is faced with a practical barrier to employment, not a legal one. The plaintiff argues that she has been deprived of liberty since disclosure of the reasons for her termination to prospective employers would "grossly [impair] plaintiff's ability to pursue employment opportunities within her chosen profession." Amend. Compl. at ¶ 9. To infringe one's liberty, the effect of government action on future employment must extend beyond a disadvantage or impediment; it must "foreclose his freedom to take advantage of other employment opportunities." *Roth*, *supra* 408 U.S. at 573.

Defendant Internal Revenue Service (the Service), in terminating the plaintiff, did not make any charge against her that might seriously damage her standing and associations in her community. The personnel action in *Roth* had not been accompanied by any reasons whatsoever, whereas in the present case the adverse action was taken expressly for reasons of misleading information provided by the plaintiff during the pre-employment process. The disclosure of this reason might interfere with her opportunities for subsequent employment. However, that they are not of such a serious and derogatory nature as to require procedural due process protection. Further, the plaintiff has not presented facts indicating that her termination was accompanied with a change of legal status, beyond a disadvantage or impediment that forecloses her freedom to take advantage of other employment opportunities. *Mazaleski*, 562 F.2d 701 at 713, (1977).

23

PRIVACY ACT CALIMS

C.  **PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM UNDER 5 U.S.C.§ 552a(e)(5) OF FAILURE TO MAINTAIN ACCURATE RECORDS.[3]**

The Privacy Act requires agencies to "maintain all records which are used by the agency in making any determination about any individual" accurately and completely "as is reasonably necessary to assure fairness to the individual in the determination." 5 U. S. C. § 552a(e)(5). The Privacy Act does not require the Service to maintain perfect records. The Service satisfies its obligations under the Privacy Act if its records are reasonably accurate. See, e.g., Johnston v. Horne, 875 F.2d 1415, 1421-22 (9th Cir. 1989). The Privacy Act also provides for an award of damages in the event the agency intentionally or willfully fails to properly maintain the records. 5 U.S.C. § 552a(g)(4).

Therefore, in order to state a claim for damages for a violation of this provision of the Privacy Act, plaintiff must establish (1) she was aggrieved by an adverse determination, (2) the Service failed to maintain her "records with the degree of accuracy necessary to assure fairness in the determination," (3) the Service's "reliance on the inaccurate records was the proximate cause of the adverse determination," and (4) the Service "acted intentionally and willfully in failing to maintain accurate records." *Chambers v.U.S. Dep't of the Interior*, 568 F.3d 998, 1006-07 (D.C. Cir. 2009) (quoting *Deters v.U.S. Parole Comm'n*, 85 F.3d 655,657 (D.C. Cir. 1996)). As stated above, plaintiff may only recover economic damages for a violation of the privacy Act and may not receive damages for mental injuries such as embarrassment or emotional distress. Under the Privacy Act, there is a difference between facts that can be verified and subjective differences

---

3 Plaintiff's allegations involving 5 U.S.C. § 552a(e)(5) are contained in her first, second, and third causes of action. Accordingly, they will be considered together.

which require opinion and credibility determinations.   See *Doe v. United States*, 821 F.2d 694,

699-701 (D. D.C. 1987). An agency meets its requirements under the Privacy Act when it verifies

the facts with reliable sources and includes both sides of a subjective difference in the individual's

file. *Id*. The agency is not required to remove information from an individual's file merely because

the individual disagrees with it, so long as the information is received from a reliable source. See

*Doe*, 821 F.2d at699-701.

In her complaint, plaintiff has not alleged that inaccurate records proximately caused her

termination. Plaintiff alleges that she was terminated after the Service "falsely accused [p]laintiff

of lying about Ashbourne & Company, and about her 2001 resignation from C.J. Johnson, Inc."

Amend. Compl. ¶25. However, although plaintiff complains generally about her records, she does

not state that the Service relied on inaccurate or incomplete records when it terminated her. In

fact, plaintiff appears to allege that the correct facts were contained in her file, yet the Service

ignored or misinterpreted them.   Amend. Compl. ¶¶ 26, 32, 36 (stating that the agency did not

understand plaintiff's reported work experience with Ashbourne and Company and that the

Service knew plaintiff made full disclosure regarding her employment with C.J. Johnson, Inc.).

Plaintiff alleges that the Service relied upon the background investigator's notes to

conclude Ashbourne and Company was non-existent because it did not have an EIN, ITIN, or

Albany city business license. Amend. Compl. ¶ 27.   However, plaintiff admits all of

these facts are true and that Ashbourne and Company does not have an EIN, ITIN, or Albany city

business license.   Amend. Compl. ¶¶ 28-30. Plaintiff also alleges that the Service "determined"

Ashbourne and Company did not exist because it was not listed as an employer in e-QIP (an

electronic Questionnaire for Investigations Processing (e-QIP)). Amend. Compl. ¶ 35. Even if

this was an incorrect fact for purposes of the Privacy Act, all of the information contained in

e-QIP came directly from plaintiff and was input by her. Additionally, plaintiff's notice of proposed termination and notice of termination make no mention of an EIN, ITIN, TIN, an Albany city business license, or Ashbourne and Company not being listed as an employer in e-QIP. Accordingly, plaintiff has not alleged that the Service relied upon any inaccurate records regarding Ashbourne and Company when it terminated her.

Although plaintiff has stated that her file has many errors, she has only identified three facts contained in her file she claims are incorrect- an affidavit signed by her former employer (Mr. Johnson), interview notes about witnesses plaintiff claims were never interviewed, and records that plaintiff had been terminated by companies she never worked for[4] Amend. Compl. ¶¶ 40-41, 55-56. Of those three, only one was relied upon by the Service in plaintiff's termination-Mr. Johnson's affidavit.   In her amended complaint, plaintiff alleges that an affidavit signed by Mr. Johnson stating the reasons why the employer terminated plaintiff is false. Amend. Compl. ¶¶ 40-41. Plaintiff provided her account of her employment with Mr. Johnson and alleged the Service violated the Privacy Act when it "believed Mr. Johnson's account, and not [p]laintiff." Amend. Compl. ¶¶ 36-39, 59.   However, plaintiff has not alleged that the affidavit signed by Mr. Johnson does not accurately reflect Mr. Johnson's statement about plaintiff's employment.   The affidavit was prepared by Mr. Johnson and Mr. Johnson is a reasonable source to rely upon regarding the circumstances of plaintiff's employment with Mr. Johnson and the Service is not

---

4  Plaintiff does not identify which witnesses were allegedly not interviewed or from which employers the Service alleged she was terminated but for which she did not work.   After review of plaintiff's personnel file, the only termination information located was in plaintiff's e-QIP and provided by her. She does not allege that either of these items were relied upon by the Service when it terminated her. Plaintiff also claims that the Service maintained records that plaintiff was "comparable to alcoholics, drug addicts, and criminals, and to employees who had unresolved financial delinquencies, a history of DUIs, and a history of substandard word performance" but plaintiff has not identified what those records are or which facts are inaccurate.   Amend. Compl. ¶ 54.   A review of plaintiff's employment files did not locate any records that even remotely resemble this allegation. Accordingly, the defendants are without knowledge of what plaintiff is referring to.

required to remove the affidavit merely because plaintiff disagrees with it. See *Doe*, 821 F.2d at 699-701.

The question, therefore, is not whether what Mr.Johnson told the government is true or untrue, but whether the record is a true and correct recitation of what Mr. Johnson told the government.   It would be impractical, if not, impossible for the government to independently verify which account- plaintiff's or Mr. Johnson's – is correct as plaintiff and Mr. Johnson were the only ones present.  Accordingly, as plaintiff has not alleged that the affidavit is an inaccurate recitation of Mr. Johnson's statement and the contents of the conversation between Mr. Johnson and plaintiff cannot be independently verified, she does not state a claim for inaccurate records under the Privacy Act and the Service meets its requirements under the Privacy Act when it includes both versions in plaintiff's file, even if the Service states it has no reason to doubt Mr. Johnson's account.[5] *Id.* at 695, 699-701; see also *Feldman v. CIA*, 797 F. Supp. 2d 29, 46-48 (D.D.C. 2011) (plaintiff did not state a claim for failure to maintain accurate records when plaintiff's dispute was regarding how the federal employee interpreted the facts and not any factual errors. The court was further persuaded by the fact that the plaintiff provided a written response to the allegations and the decision-maker stated that those responses were taken into consideration in making the final decision).

Plaintiff has not identified any factual errors relied upon by the Service and has not alleged how any alleged inaccuracies or incompleteness caused her termination. Plaintiff alleges

---

5  In her complaint, plaintiff alleges the Service improperly opined that it believed Mr. Johnson's account, and not plaintiff. Amend. Compl. ¶59.   Defendant presumes that plaintiff is referencing her dismissal letter which states "I have considered all 7 of the items that you've provided in your written response and feel that it does not change my opinion that the employer signed an affidavit stating you were terminated for an unexcused 3 day absence." Accordingly, the letter does not state that the Service believes Mr. Johnson's account and not plaintiff's, as plaintiff alleges.

that the Service "did not understand [p ]laintiff's work experience or Ashbourne & Company" and

that Service employees were "not knowledgeable about eQIP or the federal resume." Amend.

Compl. ¶¶ 32-33. However, plaintiff has not alleged there were errors in her resume or her e-QIP

responses, all of which were provided by her, only that the Service did not understand them. See

*Feldman*, 797 F. Supp. 2d at 46-48 (no cause of action under the Privacy Act where plaintiff

attempts to challenge the fully informed judgment of a federal official rather than correct factual

inaccuracies). Plaintiff's other allegations regarding her records appear to be more related to

completeness in that the records do not contain certain key words from the "excruciating detail"

plaintiff provided the background investigator. Amend. Compl. ¶¶ 23-24. Plaintiff has not alleged

any incompleteness resulted in her termination or that the records were not reasonably accurate.

See, e.g., *Johnston,* 875 F.2d at 1421-22 (noting that an agency does not have to keep perfect

records). Further, the Privacy Act allows an agency to maintain in its records "only such

information about an individual as is relevant and necessary to accomplish a purpose of the

agency required to be accomplished." 5 U.S.C. § 552a(e)(1). To the extent plaintiff is alleging that

the Service was required to collect and maintain the "excruciating detail" plaintiff provided to the

background investigator, plaintiff has not alleged how the "excruciating detail" was relevant and

necessary to accomplish a purpose of the agency.

  In plaintiff's first cause of action, plaintiff alleges it was "unreasonable" for the Service to

"intentionally and willfully" rely on employees to maintain plaintiff's records who do not

understand the automated application system, "the federal resume", e-QIP, and who are not

political appointees, Chief Audit Executives, Tax Attorney/CPAs, and who, in plaintiff's opinion,

"do not even meet the minimum qualifications for an entry level auditor position" and "ignored

[p]lainitff's superior qualifications." Amend. Compl. ,¶¶ 46-50. However, the Privacy Act does

not require the agency to select employees who have certain   qualifications to maintain its

records or even to have different employees maintain records based on the qualifications of the

individual to whom the records apply. See 5 U.S.C. § 552a(e) (listing the agency requirements

under the Privacy Act). The Privacy Act is only concerned about the "accuracy, relevance,

timeliness, and completeness" of the records. 5 U.S.C. § 552a(e)(5). The underlying facts do not

change based on the qualifications of the person maintaining the records. Plaintiff must "identify

a specific document, prove its inaccuracy [or incompleteness], and demonstrate the document

was used against her" in order to maintain an action under this section of the Privacy Act.

*McCready v. Nicholson*, 465 F.3d 1, 12 (D.C. Cir. 2006); *see also Chambers*, 568 F.3d at 1007;

*Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir. 1986). Additionally, plaintiff must allege her

termination was caused by factual errors, not differences in judgment or opinion.   See

*McCready*, 465 F.3d at 19; *Feldman*, 797 F. Supp. 2d at 47-48.   Since plaintiff has not done so,

she fails to state a claim under section 552a(e)(5) of the Privacy Act.

Even if the Court were to hold that plaintiff's complaint sufficiently alleges that the

Service relied on incomplete and inaccurate information in making its determination to terminate

her, plaintiff has not alleged any facts to show that the Service did so intentionally or willfully. As

stated above, intentionally and willfully has been defined as more than gross negligence. Plaintiff

has merely alleged that the Service acted intentionally without providing any more facts showing

how Service actions amounted to more than gross negligence. Amend. Compl. ¶¶45-50. The only

specific allegation plaintiff makes as to how the Service acted intentionally and willfully is

plaintiff's assertion that the Service relied on unqualified employees to maintain plaintiff's

records. Amend. Compl. ¶¶45-50.   However, as noted above, the Privacy Act does not set

minimum qualifications for employees who maintain agency records. The Service relied on a

29

sworn affidavit from the former employer at issue and plaintiff's own responses in the employment section of the e-QIP. The Service cannot be said to have acted negligently when it verified the information plaintiff provided (let alone grossly negligently), and certainly not intentionally and willfully.

Plaintiff has failed to state what allegedly incomplete or inaccurate information was relied upon by the Service in terminating her or how the Service's actions amount to intentional or willful maintenance of incomplete or inaccurate records. Therefore, plaintiff's complaint should be dismissed for failure to state a claim.

**1. Plaintiff Fails to Allege Facts Sufficient to State a Claim under 5 U.S.C. § 552a(g)(1){D) for Alleged Unauthorized Disclosure or Dissemination**

The Privacy Act prohibits an agency from disclosing records contained in its system of records except by consent of the individual to whom the record pertains or unless the disclosure is authorized by one of the exceptions. 5 U.S.C. § 552a(b). If an agency discloses a record in violation of the Privacy Act, an aggrieved individual may bring an action in district court. 5 U.S.C.§ 552a(g)(1)(D). In order to state a claim under this provision of the Privacy Act, plaintiff must plead sufficient facts to show that the disclosures violated the Privacy Act. *Walker,* 647 F. Supp. 2d at 536. For the disclosure to violate the Privacy Act, the disclosed information must come from a system of records maintained by the agency. Id. Plaintiff must allege the circumstances surrounding the disclosure including what information was disclosed, when the disclosure occurred, to whom the information was disclosed, and other items sufficient to alert the defendant as to the information alleged to have been disclosed. See *Collins v. FBI*, No. 10-cv-03470, 2011 U.S. Dist. LEXIS 46019, at *20-21 (D. N.J. Apr. 28, 2011); *Floyd v. U.S. Dep't of Homeland Sec.*, No. RDB-09-0735, 2009 U.S. Dist. LEXIS 99865, at *10, *20-21 (D. Md. Oct. 27, 2009); see also

30

*Colton v. IRS*, 1989 U.S. Dist. LEXIS 12021, at *17 (D. Nev. Apr. 4, 1989) (in the I.R.C. § 7431 context, allegations of unauthorized disclosure were insufficient where plaintiff failed to specify what information was revealed, to whom, and under what circumstances).

The Privacy Act also requires an agency to make a reasonable effort to assure that records are accurate, complete, and timely before disseminating the records to any person other than an agency. 5 U.S.C. § 552a(e)(6). If an agency violates this requirement, an individual may bring suit in district court and, as discussed above, receive damages, if the agency acted intentionally and willfully and the individual suffered actual damages. 5 U.S.C. § 552a(g)(1)(D). In order to state a claim under this provision of the Privacy Act, plaintiff must allege sufficient facts to show that the agency disseminated records to any person other than an agency, that the agency did not make reasonable efforts to assure the record was accurate prior to it being disseminated, and that the disseminated records are causally related to the adverse effect. 5 U.S.C. § 552a(e)(6); *Falwell v. Exec. Office of the President*, 158 F. Supp. 2d 734,743 (W.D. Va. 2001).

In this case, plaintiff has not alleged sufficient facts to state a claim for either unauthorized disclosure or dissemination of inaccurate or incomplete records. Plaintiff merely alleges, without more, that "[p]laintiff's records indicate that [GHW] had improperly and willfilly disclosed and/or disseminated false and defamatory information about [p]laintiff to unauthorized employees and other individuals." Amend. Compl. ¶62.

Plaintiff does not identify what information was allegedly disclosed, who disclosed it, where they got the information, or even when it was disclosed. Plaintiff merely asserts legal conclusions that information was improperly disclosed without providing the government with any facts with which to investigate plaintiff's claim. Plaintiff's fact-free allegations make it impossible for the government to investigate what happened or to make its own determination of

31

whether any disclosures to these unidentified individuals actually occurred and were authorized.

These are merely "conclusory allegations devoid of any reference to actual events" and are not

sufficient to state a claim under the Privacy Act.   See *Walker,* 647 F. Supp. 2d at 535; Floyd,

2009 U.S. Dist. LEXIS 99865, at *20-21; but see *Feldman,* 797 F. Supp. 2d at 40-42 (although

plaintiff was not required to allege the full details of the disclosure at the pleading stage, plaintiff

did at least plead specific employees' names and approximate dates of the alleged

unauthorized disclosures).

Plaintiff also alleges that the Service failed to redact her social security number and

date of birth from documents. Amend. Compl. ¶63.   However, the Privacy Act does not require

redaction of that information if the disclosure of the records is authorized.   See 5 U.S.C. §

552a(b)(1). Plaintiff fails to specify which documents were supposed to be redacted, to whom

they were disclosed, when they were disclosed, and where the documents came from.

Even if the Court were to find that plaintiff has pled sufficient facts to state a claim of

unauthorized disclosure or dissemination under the Privacy Act, plaintiff has not shown she is

entitled to monetary damages because she has not pled sufficient facts to show the Service acted

intentionally or willfully. Plaintiff's allegations that the Service acted "improperly and willfully"

(Amend. Compl. ¶¶ 62-63) are allegations of general animus which, without more, are merely a

recitation of the elements of the cause of action and are insufficient to state a claim for damages.

Lastly, plaintiff has not alleged she suffered any actual damages as the result of the

alleged unauthorized disclosures or dissemination. Aside from the general request for damages in

her prayer for relief, plaintiff has not alleged any actual damages resulting from the alleged

unauthorized disclosures or dissemination. Therefore, she fails to state a claim for damages under

the Privacy Act for unauthorized disclosure. Plaintiff's vague allegations are devoid of facts

necessary to state a claim pursuant to 5 U.S.C. § 552a(g)(1)(D) for unauthorized disclosure or dissemination, accordingly plaintiff's complaint should be dismissed.

## 2. The Service Collected Information to the Greatest Extent Practicable from Plaintiff

Under the Privacy Act, any agency that maintains a system of records must "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2). However, the agency is not required to collect information only from that individual and may collect information from third parties when necessary. *Hogan v. England*, No. 05-1143, 2005 U.S. App. LEXIS 28837, at *4 (4th Cir. Dec. 28, 2005). The agency may verify information provided by the individual with third parties before making a determination based on that information. OMB Privacy Guidelines, 40 Fed. Reg. 28,948, 28,961 (July 9, 1975). Additionally, individuals may expressly authorize the agency to contact third parties regarding the information. *See Olivares v. NASA*, 882 F. Supp. 1545, 1549 (D. Md. 1995).

In order to maintain an action under this provision of the Privacy Act plaintiff must allege facts that show the Service failed to collect information from her to the greatest extent practicable. *Olivares,* 882 F. Supp. at 1549. In her amended complaint, although not stated as a cause of action, plaintiff appears to allege that the Service failed to collect information from her. Amend. Compl. ¶¶ 31, 33, 45.  Plaintiff does not state what information the Service did not collect from her but plaintiff appears to allege that the Service did not understand plaintiff's work experience or Ashbourne and Company so presumably plaintiff believes the Service should have sought out

additional information from her.   Amend. Compl. ¶¶ 32, 45. Plaintiff makes these allegations in reference to the FAD and alleges the Service admitted it failed to collect and record plaintiff's explanations in the FAD. However, a review of the FAD did not locate any such admissions. The only statements regarding explanations of plaintiff's work experience and Ashbourne and Company in the FAD was the Associate Chief Human Capital Officer's summary of what plaintiff did, and did not, include in her response to the notice of proposed termination. Accordingly, it appears plaintiff is alleging that because the Associate Chief Human Capital Officer noted that plaintiff did not include certain information when she was provided an opportunity to respond to the notice of proposed termination, that the Service was obligated to ask plaintiff to supplement her response to the notice of proposed termination with information that plaintiff left out.[6]

The Privacy Act only requires the Service to collect information from plaintiff (if practical) when it actually seeks to collect information. The Privacy Act does not place an affirmative duty on the Service to collect information.   See 5 U.S.C. § 552a(e)(2); cf. *Smiertka v. IRS*, 447 F. Supp. 221, 225 (D. D.C. 1978) (stating that the Privacy Act places "general limitations on the kinds of information agencies are *permitted* to collect.... ")(emphasis added). To the extent plaintiff is arguing that the Service was required to ask her for additional explanations, after receiving her lengthy response to her notice of proposed termination, because the Service allegedly did not understand plaintiff's explanations plaintiff is attempting to challenge the Service's judgment, rather than challenge any collection of information. Cf. *Feldman*, 797 F. Supp. 2d at 46-48.

---

[6] The merits of plaintiff's response to the notice of proposed termination were not at issue in the proceeding regarding whether plaintiff was discriminated against. The only thing at issue was whether plaintiff was given less of an opportunity to respond to her proposed termination or terminated based on her race or gender.

Although plaintiff has not pled a specific cause of action regarding the Service's failure to collect information from her, to the extent any of her claims could construed to be a cause of action regarding collection and the Internal Revenue's Service's duty to collect information from her, defendants maintain that plaintiff has not alleged facts to support her claim that the Service did not collect information from her, let alone that the Service did so intentionally and willfully. Therefore, the Court should dismiss plaintiff's allegations along these lines for failure to state a claim.

### 3. Plaintiff May Not Sue to Compel the Service to Amend Records Because She Failed to Exhaust Administrative Remedies

Under the Privacy Act, an individual may file suit to compel an agency to amend that individual's records on file with the agency, if those records contain inaccuracies. 5 U.S.C. § 552a(g)(1)(A); Olivares, 882 F. Supp. at 1552. However, the individual must first exhaust administrative remedies.  *Hill v. USAF*, 795 F.2d 1067, 1069 (D.C. Cir.1986). Exhaustion requires filing a proper request to amend the records under section 552a(d)(2) and having the agency deny the request. 5 U.S.C. §§ 552a(d)(2), (g)(1)(A); Hill, 795 F.2d at 1069. If the individual does not exhaust these administrative steps the court lacks jurisdiction to compel amendment of the records.  *Olivares*, 882 F. Supp. at1552.

Plaintiff has not exhausted administrative remedies. In fact, as in Olivares, plaintiff has never even pursued her administrative remedy.  See *Olivares*, 882 F. Supp. at 1552. Yet, plaintiff has included in her prayer for relief a request that the Court "[o]rder [the Service] to expunge [p]laintiff's records of inaccurate, relevant, timely, and incomplete information." Since plaintiff has not taken the proper administrative steps to have any alleged inaccuracies in her file corrected prior to filing suit, the Court lacks jurisdiction to order an amendment of the records. See id.

**4. Plaintiff May Not Use the Privacy Act to Challenge the Personnel Decision**

To the extent plaintiff is attempting to use the Privacy Act to challenge the Service's determination to terminate her employment, the Privacy Act does not permit plaintiff to collaterally attack this decision. See Feldman, 797 F. Supp. 2d at 47 (no cause of action under the Privacy Act to "attack the judgment of a federal official"); *see also Houlihan v. Office of Pers. Mgmt.*, 909 F.2d 383, 385 (9th Cir. 1990) (plaintiff cannot bring an accuracy-related Privacy Act claim to challenge a determination made pursuant to the Civil Service Reform Act); *Hobbs v. United States*, No. H-96-4260, 1999 WL 132432, at *8 (S.D. Tex. Jan. 22, 1999) (discharged IRS employee collaterally estopped from using Privacy Act amendment claim to challenge agency personnel decision after MSPB decision), aff'd on other grounds, 209 F.3d 408 (5th Cir. 2000); *Lyon v. United States*, 94 F.R.D. 69, 72 (W.O. Okla. 1982) (Federal Employees Compensation Act is exclusive method for determining federal employee on-the-job injury compensation; cannot compel amendment of compensation determinations to a different amount); *Bashaw v. Dep't of Treasury*, 468 F. Supp. 1195, 1196 (E.D. Wis. 1979) (Chief Counsel employee's sex discrimination claim falls under Civil Rights Act; may not seek amendment under Privacy Act of decision by agency to deny claim).

**6. Plaintiff May Not Recover Non-Statutory Damages for Alleged Violations of the Privacy Act**

Under the doctrine of sovereign immunity, the United States "is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted); see also *United States v. Nordic VIII. Inc.*, 503 U.S. 30, 33-34 (1992). When

Congress waives sovereign immunity, a court may not expand the waiver and grant remedies different from those expressly provided by Congress. See *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). The Privacy Act expressly provides for particular remedies for specific violations of the Privacy Act. 5 U.S.C. § 552a(g); see *Doe v. Chao*, 435 F.3d 492, 504- 05 (4th Cir. 2006); *Cell Assocs. Inc. v. Nat' I Insts. of Health*, 579 F.2d 1155, 1159 (9th Cir. 1978). Since the statute provides specific available remedies for each violation of the Privacy Act, plaintiff may not receive a recovery different from that provided by statute.   Plaintiff requested that the Court refer specific Service employees for disciplinary action and criminal prosecution. Plaintiff also requests that the Court "order the [Service] to locate qualified individuals who can properly adjudicate [p]laintiff," and order a "nameclearing" hearing.   None of these remedies are available under the Privacy Act. See 5 U.S.C. § 552a(g). Additionally, the Service employees are not parties, nor can they properly be parties, to the Privacy Act counts of this lawsuit as the agency is the only proper party under the Privacy Act. Id. ("the individual may bring a civil action against the agency .... ")(emphasis added). Since the remedies requested by plaintiff are not available under the Privacy Act, a court may not award the remedies plaintiff seeks.

**7. Plaintiff's Claim is Not Eligible for Expedited Treatment Under 28 U.S.C. § 1657**

Plaintiff requested that the Court expedite this action pursuant to 28 U.S.C. § 1657. Plaintiff's claim under the Privacy Act is not eligible for expedited treatment. Under the statute, expedited treatment is given to habeas corpus, recalcitrant witness actions, actions for temporary or preliminary injunctive relief, or any action for which "good cause" is shown. 28 U.S.C. § 1657(a). To show good cause, plaintiff must allege facts showing that her request for expedited consideration has merit. 28 U.S.C. § 1657(a). Plaintiff has not alleged any facts to show why her

case should be expedited and it is not one of the specified causes of action requiring expedited

treatment under the statute. Therefore, plaintiff's claim is not eligible for expedited treatment.


**CONCLUSION**

Based upon the foregoing, defendants respectfully request that defendants' motion to

dismiss be granted.


Dated:    December 16, 2013


Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR #447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

BY:_____/s/_____
BENTON G. PETERSON Bar # 1029849
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2534