# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| ANICA ASHBOURNE, Plaintiff | Civil Action No. 12-1153 (BAH) |
| vs. | |
| DONNA HANSBERRY, Director, Global High Wealth, Defendant | MOTION FOR RECONSIDERATION |
| DONNA PRESTIA, Assistant Director, Global High Wealth, Defendant | DATE: MARCH 25, 2015 |
| THOMAS COLLINS, Territory Manager, Global High Wealth, Defendant, | |
| and | |
| U.S. DEPARTMENT OF THE TREASURY, | |
| Timothy Geithner, Secretary | |
| Global High Wealth, a component of the U.S. Department of the Treasury, Defendant | |

**MOTION FOR RECONSIDERATION OF MARCH 24, 2015 MINUTE ORDER REGARDING LEAVE TO AMEND**

Plaintiff moves this Court to reconsider its March 24, 2015 Minute Order Regarding Leave to Amend for the reasons explained in the attached Memorandum of Support.

**MEMORANDUM OF SUPPORT**

Plaintiff has filed her motion for reconsideration in accordance with Federal Rules of Civil Procedure 59(e).  Donna Hansberry, Donna Prestia, and Thomas Collins (collectively referred to as Global High Wealth) told this court that Global High Wealth's exhibits include Plaintiff's entire Personnel File and Background Investigation File.  Doc. 66, page 5, para. 1.  However, Global High Wealth's exhibits do not include Plaintiff's entire Personnel File and her Background Investigation File.  Furthermore, it was after Plaintiff had filed her motion for summary judgment that Global High Wealth explained the reason for producing Plaintiff's *entire* files.  Doc. 66, page 6, para. 1.  Plaintiff could not find where Global High Wealth had submitted a motion for summary judgment on March 4, 2015.

As discussed below, Plaintiff believes that her 59(e) motion should be granted to avoid a clear injustice.

**GLOBAL HIGH WEALTH'S RECORDS**

**A. Global High Wealth had maintained factually defective records that Plaintiff was comparable to criminals, alcoholics, drug addicts, and employees with unresolved financial delinquencies, DUIs, and a history of substandard work performance.  Global High Wealth's Records-"Comparison Listing", pages 10-30.**

However, according to the Agency, Plaintiff has never been arrested.  Doc. 69-3, page 0008.  Plaintiff does not drink and has never taken illegal drugs.  Doc. 69-3, page 0077.  Plaintiff, with a FICO score of 800,  could not have been considered to be financially irresponsible when the Agency assigned Plaintiff a credit score of 003, the highest credit rating for Federal job applicants.  Doc. 69-3  page 0127.

Tom G. Johnson (Plaintiff's 2001 employer and who is the subject of this lawsuit) and Jeffrey Dye (a U.S. Department of Treasury employee) are the only employers within Global

High Wealth's records who have accused Plaintiff of poor work performance. Global High Wealth's Records-Former Employers, page 33.

**B. Global High Wealth has maintained interview notes for non-existent interviews. Doc. 69-3, pages 112-113.**

Moss Adams LLP, Plaintiff's 2001 employer, disputes that it was interviewed by Global High Wealth or by anyone else from the Federal government. December 2011 Email Moss Adams LLP-Wenli Wang. Plaintiff also disputes Global High Wealth's records concerning her employment at Moss Adams LLP-"Commendations".

**C. Plaintiff could not have said that she was terminated or let go from TIGTA because Plaintiff has never worked for TIGTA. Doc. 69-3, page 0008, 0031, 0033, 0034, 0035, 0042, and 0043.**

**D. Global High Wealth would not collect information from Plaintiff when Plaintiff referred to "Tax Attorney/CPA" or "Chief Audit Executive".**

In August 2010, Plaintiff had disclosed that she had resigned from C. J. Johnson, Inc. when she had suspected that Tom G. Johnson was engaged in the unauthorized practice of law and in questionable accounting practices. Global High Wealth did not collect those statements but instead said that Plaintiff had been terminated. Global High Wealth's Records-C. J. Johnson, Inc., page 34.

And, in a letter to her former employer, Plaintiff had explained how Jeffrey Dye and Rekhi Rashmi Smith had interfered with her ability to supervise Christina Shires. Global High Wealth made Plaintiff's letter illegible in its records. Global High Wealth's Records- Illegible Letter, pages 43-45.

**E. Elected Official made it clear that Plaintiff was not "let go" or "terminated". April 29, 2009 Letter Signed by the Chairman of the Board of Supervisors.**

Global High Wealth did not collect information if it related to Plaintiff's work experience as a Tax Attorney/CPA, Chief Audit Executive, political appointee, or Chief Internal Auditor.

In 2009, Plaintiff's political appointment as Chief Internal Auditor ended when the county eliminated Plaintiff's entire agency during a budget meeting. Plaintiff had attached a letter to her e-QIP application that explained the circumstances surrounding Plaintiff's departure. April 29, 2009 Letter Signed by the Chairman of the Board of Supervisors.

Instead of stating that Plaintiff's political appointment had ended, Global High Wealth had maintained that Plaintiff had been "let go". Doc. 69-3, page 104. And, Global High Wealth had removed the letter from Plaintiff's records, even though Plaintiff had attached it to her e-QIP application.

During the interview, Global High Wealth had improperly disclosed to the Chairman that Plaintiff had previous employment issues. Doc. 69-3, page 104.

Global High Wealth had also inaccurately recorded that the Chairman was Plaintiff's supervisor, that he was retired, and that he had hired Plaintiff. Global High Wealth did not understand the difference between "supervisor" and "Supervisor". That distinction is important because Plaintiff, as the county's Chief Internal Auditor, could not have been supervised by anyone. And, this person was not retired but was the Chairman of the Board of Supervisors. Most importantly, the Chairman could not, and did not, hire Plaintiff. Instead, Plaintiff was hired by the Board of Supervisors at a televised meeting.

In 2007, Plaintiff's political appointment as Oakland, CA's Assistant City Auditor ended when the City Auditor lost the election. Instead of recording that Plaintiff's political appointment had ended, Global High Wealth maintained that Plaintiff had been "let go". Doc. 69-3, page 113.

**F. Global High Wealth had falsely recorded that Plaintiff "had worked for a law firm knowing that the business had unknown issues and had volunteered to resign before major issues arose". Doc. 69-3, page 103.**

Global High Wealth attributed these statements to a former colleague of Plaintiff's who has denied making them. Nevertheless, Global High Wealth had verified Plaintiff's employment history, so it knew that Plaintiff had never been employed by a law firm.

Global High Wealth's interview notes are also inaccurate because Plaintiff did not meet this colleague until 2008, Plaintiff was not "let go", Plaintiff was not looking for employment, and Plaintiff was not "terminated". Doc. 69-3, page 103.

**G. Global High Wealth did not collect information from Plaintiff.**

In May 2010, Global High Wealth offered Plaintiff a $115,789/year Auditor-in-Charge position. Global High Wealth did not interview Plaintiff because the Agency had already designated Plaintiff a candidate with "superior qualifications". Global High Wealth's Records-Plaintiff Not Interviewed, page 35.

In August 2010, Global High Wealth did not collect information from Plaintiff about Ashbourne & Company or about C.J. Johnson, Inc. Doc. 69-3, page 112-114.

On May 9, 2011, Global High Wealth made it clear that it would not collect information from Plaintiff about Ashbourne & Company or about C. J. Johnson, Inc. In fact, Global High Wealth said that Plaintiff only had two options: 1) resign or 2) be terminated for lying. Global High Wealth's Records-Resign or Be Terminated, page 5.

On May 10, 2011, Plaintiff was given a notice of proposed termination with an opportunity to submit a written response. Global High Wealth's Records-Notice of Proposed Termination, pages 2-3. However, on May 9, 2011, Global High Wealth had already made it clear that it

would not collect information from Plaintiff about Ashbourne & Company or about C.J. Johnson, Inc.  Global High Wealth's Records-Resign or Be Terminated, page 5.

**H.  Global High Wealth falsely stated in its motion for change of venue that Plaintiff had been terminated in Washington, DC.  Doc. 35, page 4, para. 3 and footnote 2.**

On May 10, 2011, Global High Wealth confiscated Plaintiff's keys and ID badge, and removed Plaintiff from her Washington, DC work station.  Global High Wealth then directed Plaintiff to work from her Maryland home, and that is where Plaintiff was terminated on May 28, 2011. Global High Wealth's Records-Terminated in Maryland, page 1.

## CONCLUSION

Donna Hansberry, Donna Prestia, and Thomas Collins did not provide this Court with Plaintiff's entire file.  For all of the above reasons, Plaintiff moves that this Court grant her Motion for Reconsideration.

Respectfully submitted,

*/s/ Anica Ashbourne*

Anica Ashbourne
7422 Drumlea Road
Capitol Heights, MD  20743
Home:  (240) 788-7712

**CERTIFICATE OF SERVICE**

      I certify that the following received a copy of the **MOTION FOR RECONSIDERATION** by regular mail on March 26, 2015:

1.US Department of the Treasury
Timothy Geithner, Secretary
1500 Pennsylvania Avenue NW
Washington, DC  20220

2.Benton Peterson, Assistant U.S. Attorney (ecf)
US Attorney's Office
555 4th St. N.W.
Washington, DC  20530

3.  Donna Hansberry
835 22nd St S
Arlington, VA 22202

4. Donna Prestia
3353 Stuart Ct
Adamstown, MD 21710

5. Thomas Collins
Global High Wealth
Department of the Treasury - IRS
324 25th Street
Ogden, UT  84401-2310

    Respectfully submitted,

_____
Anica Ashbourne
7433 Drumlea Road
Capitol Heights, MD 20743
(240) 788 – 7712